IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rock Ferrone and Rock Airport of Pittsburgh, L.L.C., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No. 05-303 |
| v. | ) | Judge Donetta W. Ambrose/ |
| | ) | Magistrate Judge Sensenich |
| DAN ONORATO, individually and | ) | |
| officially, DENNIS DAVIN, | ) | |
| Individually and Officially, | ) | |
| and ALLEGHENY COUNTY, | ) | Doc. # 18 |
| | ) | |
| Defendants | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is recommended that Defendants' Motion to Dismiss the complaint be granted as to Counts II and III; denied as to Count I; and denied without prejudice as to Counts IV, V, VI, VII and VIII.

**II.  REPORT**

Rock Ferrone and Rock Airport of Pittsburgh, L.L.C., hereinafter "Plaintiffs", filed this case against Allegheny County and two county officials, hereinafter collectively "Defendants".  (Compl., Doc. # 1 at ¶¶ 17-30.)  The two officials, Dan Onorato, the Chief Executive of Allegheny County and Dennis Davin, the Director of the Department of Economic

Development of Allegheny County, are named as Defendants in their individual and official capacities. (*Id.* at ¶¶ 20-27).

Plaintiffs allege state and federal constitutional violations, federal statutory claims, and various state tort claims. (*Id.* at ¶¶ 6-7, 101-156.) They seek injunctive relief and monetary damages. (*Id.* at ¶8.)

In their Motion to Dismiss, Defendants assert that Plaintiffs have failed to state a claim for relief under the Civil Rights Statutes, Sections 1983, 1985(3), and 1986, as codified in Title 42 of the United States Code. (Doc. # 18 at 2-5.) Defendants also argue that they are protected from suit on the state law claims by governmental immunity. (*Id.* at 4.) Thus, Defendants request that Plaintiffs' complaint be dismissed in its entirety. (*Id.* at 2.)

### A.   Factual Background

Plaintiffs allege that Defendants' wrongful acts, omissions, and conspiracies began on January 4, 2005 and continued to approximately February 8, 2005. (Doc. # 1 at ¶ 31.) The complaint avers that electronic communications, hereinafter "e-mail", they sent to "several Allegheny County Council members" and "all the e-mails sent to any Allegheny County e-mail address" did not reach the intended recipients, but "were re-directed to one or more agents" of Defendants Davin and Onorato "for review,

dissemination and/or censoring." (*Id.* at ¶¶ 48-50.) Plaintiffs further assert that the e-mails were intentionally re-directed:

> in an effort to limit the Plaintiffs'
> expression of their opinions regarding
> Allegheny County government[,] . . . prevent
> information containing facts requested by the
> several members of Allegheny County Council
> from reaching their intended recipients[,] .
> . . to limit and prevent the Plaintiffs from
> providing information to the several members
> of Allegheny County Council and other
> officials and employees of Allegheny County.

(*Id.* at ¶¶ 51-53.) Plaintiffs also claim that the e-mails were redirected to allow Defendants "to examine and utilize the information that the Plaintiffs provided . . . for their own purposes" including "advising private parties who are not officials and employees of Allegheny County, so that said private parties could reap private gain from said information." (*Id.* at ¶¶ 54-55.)

Plaintiffs aver that they learned that their e-mails were being diverted when Defendant Davin informed them that he had not received certain e-mails which had been sent by Plaintiff Ferrone. (*Id.* at ¶¶ 58-71.) This was confirmed when Mr. Davin and Mr. Ferrone attempted to send e-mails to each other, and Mr. Ferrone received Defendant Davin's e-mails, but Defendant Davin did not receive Mr. Ferrone's e-mails. (*Id.*) Plaintiffs claim that after this discovery, Defendant Davin "commented that 'Dan may have blocked your e-mail, if it was the e-mail address that those 'blast e-mails' were coming from.'" (*Id.* at ¶ 72.)

3

Plaintiffs further allege that "Mr. Ferrone then contacted a member of the Allegheny County Council, who advised him that no e-mails had been received from him since before the meeting of January 4, 2005." (*Id.* at ¶ 76.)

After this discovery, Plaintiffs assert that Mr. Onorato, while on the radio, stated to the public that Mr. Ferrone had sent him "venomous" e-mails. (*Id.* at ¶ 118.) Allegedly, this statement was repeated to a reporter and a public official and similar statements were made to clients of Plaintiffs at a County holiday party. (*Id.* at ¶¶ 122, 124, 126.)

### B.   <u>Standard for Motion to Dismiss</u>

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff.  *See Blaw Knox Retirement Income Plan v. White Consol. Indus.*, 998 F.2d 1185, 1188 (3d Cir. 1993); *Ditri v. Coldwell Banker Residential Affiliates*, 954 F.2d 869, 871 (3d Cir. 1992).  The issue is not whether the plaintiff will ultimately prevail, but rather whether he can support his claim by proving *any* set of facts that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69 (1984).  Dismissal is appropriate "only if it is clear that no relief could be granted

4

under any set of facts that could be proven consistent with the allegations." *See Port Auth. v. Arcadian Corp*, 189 F.3d 305, 311 (3d Cir. 1999).

To survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may reasonably be inferred. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). It is the defendant who bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

### C.   <u>Discussion</u>

Plaintiffs' complaint lists eight counts. Counts I, II and III allege violations of the Civil Rights Statutes, codified at 42 U.S.C. §§ 1983, 1985(3), and 1986. (See Doc. # 1.) Counts VII and VIII assert invasion of privacy and civil conspiracy based on state law. Finally, Counts IV, V, and VI claim tortious conduct under state law, specifically slander, commercial disparagement, and conversion.

Defendants' Motion to Dismiss argues that the complaint fails to state a cause of action under the Civil Rights Statutes and that they are immune from suit on the remaining state law claims. (See Doc. # 19.)

**1. Failure to State a Claim[1]**

**a. Section 1983**

Defendants argue that Plaintiffs' Section 1983 claim should
be dismissed because Plaintiffs have failed to assert any valid
underlying constitutional or statutory violation. (Doc. # 19 at
4.) Section 1983 provides a procedural tool that allows
individuals to bring a federal cause of action against any person
who, acting under color of state law, has deprived them of their
federal rights.  42 U.S.C.A. § 1983 (West 2003).  This Section
states:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress.

42 U.S.C.A. § 1983.

To state a claim under Section 1983, Plaintiffs must meet
two threshold requirements.  They must aver:  (1) that the
alleged misconduct was committed by a person acting under color
of state law; and (2) that as a result, they were deprived of

---

[1] Plaintiffs do not claim to have alleged a Fifth Amendment
violation. (Doc. # 22 at 16-17.) Thus, Defendants' Motion to
Dismiss based on this issue will not be addressed.(See Doc. # 19
at 9-10.)

rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Plaintiffs allege that Defendants Onorato and Devin were acting under color of state law.  (Doc. # 1 at 13-18.) Plaintiffs assert three constitutional violations. First, Plaintiffs aver that Defendants actions violated their First Amendment rights to freedom of speech and to petition the government for a redress of grievances. (Doc. # 1 at ¶¶ 78-83.) Second, Plaintiffs assert that Defendants violated their rights to privacy, to equal protection and to due process of the law under the Fourteenth Amendment of the United States Constitution. (*Id.* at ¶¶ 84-87, 92-98.) Finally, Plaintiffs argue that they were deprived of rights under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures because the e-mails sent to certain county officials were illegally "seized".  (*Id.* at ¶ 84.)

Defendants do not challenge Plaintiffs' allegation that Defendants Onorato and Devin were acting under color of state law. (See Doc. # 19.) Instead, Defendants move to dismiss for failure to state a claim on the ground that the conduct alleged does not violate the Constitution.(*Id.* at 4.) Defendants bear the burden of establishing that the complaint fails to state a claim. *See Gould Elecs.,* 220 F.3d at 178.  Thus, Defendants must

demonstrate that the Constitution is not implicated when state officials intercept and re-direct e-mail sent by a private party to other elected officials. Defendants fail to establish that Plaintiffs' claim is not viable under the Constitution.

Beginning with Plaintiffs' First Amendment claim, Defendants argue that Allegheny County's e-mail system is not a public forum and e-mail is not a form of communication that is protected by the Petition Clause.[2] (Doc. # 19 at 4-6.) Plaintiffs respond that Allegheny County's e-mail system is open to citizens at large and is thus a public forum, and that members of County Council encourage their constituents to contact them electronically for public discourse. (Doc. # 22 at 6.) Alternatively, Plaintiffs assert that even if e-mail is not a public forum, Defendants' actions in preventing public officials from receiving e-mails still violates the First Amendment because they were an unreasonable restriction on e-mail communications with public officials. (*Id.* at 7.)

---

[2] Defendants also argue that the subject matter of the e-mails was commercial in nature and therefore did not constitute a matter of public concern that is protected by the Petition Clause. (Doc. # 19 at 5.) Defendants' argument appears to confuse the First Amendment right to petition the government with the First Amendment right to freedom of expression. Government employees have a right to petition the government in matters which do not implicate a public concern but their right to free speech is limited to matters of public concern. See discussion of *San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994) and *Cooper v. Cape May County Bd. of Soc. Servs.*, 175 F. Supp. 2d 732 (D.N.J. 2001.) *infra.*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I. The United States Supreme Court has explained that when evaluating a petition clause claim:

> We start with the premise that the rights to assemble peaceably and to petition for a redress or [sic] grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. "All these, though not identical, are inseparable." . . . The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such.

*United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Plaintiffs generally allege that Defendants' conduct was directed toward them to discourage them from exercising their rights to free speech and to petition the government, rights which were described as intimately connected by the *United Mine Workers* Court. (See Doc. # 1 at ¶¶ 81-83.) Specifically, Plaintiffs aver:

> 81.  The official conduct engaged in by the Defendants was intentionally directed toward the Plaintiffs . . . to discourage the Plaintiffs from engaging in a Constitutionally protected right, namely their rights under the First

Amendment . . . to freely participate in government <u>by providing their opinions, information and grievances to government</u> ...

82.   The official conduct engaged in by the Defendants was intentionally directed toward the Plaintiffs . . . to discourage the Plaintiffs from engaging in a Constitutionally protected right, namely their rights under the First Amendment . . . <u>to freely voice objection to government policy, custom, procedure and actions</u> as carried out by government employees and officials under the color of law, or was in reckless or grossly negligent disregard of those rights.

(*Id.* at ¶¶ 81-82.)(Emphasis added.)

Defendants argue that the Petition Clause only applies to formal mechanisms for the redress of grievances and that the county e-mail system does not qualify as a formal mechanism. (Doc. # 19 at 5-6.) Further, Defendants seem to contend that the content of the e-mails must involve a matter of public concern to be protected under the Petition Clause. (*Id.* at 5.) As support for these arguments, Defendants cite two cases: *San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994) and *Cooper v. Cape May County Bd. of Soc. Servs.*, 175 F. Supp. 2d 732 (D.N.J. 2003). However, these cases are distinguishable because they involved grievances and free speech rights of public employees rather than private citizens, as are Plaintiffs. On the other hand, they discussed important differences between the right to petition and

the right to free speech which are relevant to this case because
Plaintiffs allege that both rights have been violated.

In *San Filippo* the court vacated the district court's grant
of summary judgment in the defendant's favor on the plaintiff's
first amendment claim that his dismissal as a tenured professor
at a state university was in retaliation for the exercise of his
First Amendment rights to free speech and to petition the
government. The court drew an important distinction between the
First Amendment right to petition the government and the First
Amendment right to free speech:

> As explained above, one who alleges
> retaliatory discharge from governmental
> employment must establish that the conduct
> which triggered the discharge was protected
> under the first amendment. Where the alleged
> retaliation is based on expressive conduct
> constituting speech, a court must first
> determine whether or not the speech can be
> fairly characterized as addressing a "matter
> of public concern," for a governmental
> employee who makes public complaints about
> problems not of "public concern" has no first
> amendment immunity against employer
> discipline *Connick v. Myers*, 461 U.S. 138 . .
> . (1983). But San Filippo's expressive
> conduct was not limited to speech. It
> included the filing both of law suits, and
> also of grievances under a collective
> bargaining agreement, against the University
> and University officials--activities that
> implicate the petition clause, rather than
> the free speech clause, of the first
> amendment.

*San Filippo,* 30 F.3d at 434-435. The Court of Appeals held that
the district court had erred in granting the defendant's motion

11

for summary judgment without allowing relevant discovery. The court recognized its struggle in dealing with a fact situation in which the alleged "petition" for which the plaintiff claimed he was discharged in retaliation, constituted speech. See *Id.* at 438, 440. One of San Filipo's alleged "petitions" was a letter complaining about dangerous conditions in the chemistry laboratories. After a long discussion of the difference between petitions and other writings claimed to be protected under the "petition" clause, the court set forth its distinction between the two:

> As applied to communications that are not petitions, the *Connick* rule means that a public employee who goes public -- e.g., by writing to The New York Times -- with an employment dispute that is not of "public concern" runs the risk of being disciplined by her public employer for undertaking to draw public attention to a private dispute. But when one files a "petition" one is not appealing over government's head to the general citizenry: when one files a "petition" one is addressing the government and asking government to fix what, allegedly, government has broken or has failed in its duty to repair.

*Id.* at 442. The court did not resolve the issue as to which documents qualified as "petitions" but directed the district court, on remand to "consider which, if any, of San Filippo's grievances and lawsuits constituted a 'petition,' and whether any such 'petition' was non-sham." *Id.* at 443.

The *San Filippo* Court explained that there is no "public concern" requirement when the speaker is a private party:

> The Supreme Court recently elaborated on the basis for authorizing the government as employer to exercise broader power in regulating the speech of its employees than the government as sovereign may exercise in regulating the speech of the general public:
>
> . . . .
>
> > The key to First Amendment analysis of government employment decisions, then, is this: The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a relatively significant one when it acts as employer. <u>The government cannot restrict speech of the public at large just in the name of efficiency</u>. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.

*Id.* at 441, quoting *Waters v. Churchill*, 511 U.S. 661, 675 (1994)(emphasis added).

The critical difference between the two, <u>for public employees</u>, is that if the retaliation was for the public employee's speech he must show a public purpose but if the retaliation was for petitioning the government, the plaintiff need not show a public purpose. *San Filippo*, 30 F.3d at 440. On the other hand, private citizens can express their opinions freely without having to show a public purpose.

In a subsequent case, *WE, Inc. V. City of Philadelphia, Dep't of Licenses & Inspections,* 174 F.3d 322, 330, n.2 (3d Cir.

13

1999) the Court noted that its holding in *San Filippo* was confined to the public employment/retaliatory discharge context.

Plaintiff Ferrone is a private citizen and *from San Filippo* it would appear we can conclude that private citizens have a First Amendment right to petition the government and to express their concerns and interests to government officials without having to show a public interest.

In *Cooper*, cited by Defendant, the plaintiff was a clerk at the county board of social services. The defendants' motion for summary judgment was granted as to the plaintiff's claim under Section 1983 asserting he was denied a promotion in retaliation for his complaints about a co-worker. The court found that his speech did not implicate a public concern and therefore was not protected under the First Amendment. It distinguished retaliation for protected activity, such as filing a grievance, where no public concern is necessary, from retaliation based on speech, which is not protected unless there is a public concern. The court found that the plaintiff's speech - complaints about a co-worker - did not present a public concern. However, that case is not relevant here since private citizens can express their opinions freely without having to present a public concern.

Next, Defendants assert that the right to petition does not apply to Plaintiff's emails because the right to petition is only protected if a formal mechanism for filing grievances is

14

utilized, quoting from *Cooper*. (Doc. # 19 at 5-6 quoting *Cooper*, 175 F. Supp. at 746.) They also argue that Plaintiffs have not alleged they were deprived of free speech under the First Amendment because they have not alleged a public interest. However, as noted above, *Cooper* is not applicable because Cooper was a public employee, not a private citizen, as are Plaintiffs.

In the case of *McDonald v. Smith,* 472 U.S. 479, 482-83 (1985) the United States Supreme Court recognized the well established right of a private citizen to 'petition' the government for redress of grievances under the First Amendment, but held that the Petition Clause of the First Amendment does not grant absolute immunity from liability for libel. The Court evaluated a letter written to the President of the United States, under the Petition Clause. 472 U.S. at 483. This would appear to refute Defendants' argument that letters cannot be considered petitions under the Petition Clause. Defendants have not cited any authority suggesting that e-mails have less protection under the First Amendment than letters.

Defendants have not established that an e-mail communication to an elected official by a private party cannot be a petition protected by the First Amendment, or that their alleged diversion of Plaintiff Ferrone's e-mails did not violate his right to freedom of speech. As the *McDonald* Court noted, "James Madison made clear in the congressional debate on the proposed amendment

15

that people 'may communicate their will' through direct petitions to the legislature and government officials." *Id.* at 482. Defendants have not cited any authority treating e-mails different from a letter in the First Amendment context. Therefore, Defendants have failed to establish that the Petition Clause is not applicable to Plaintiffs' e-mails.

Plaintiffs have alleged facts which, if true, could support a finding that their communications to governmental officials were intercepted by Defendants. Specifically, Plaintiffs allege that:

> 51.  The re-directing of the Plaintiffs' e-mail was undertaken at the behest of Onorato and Davin, and other persons presently unknown to the Plaintiffs, in an effort to limit the Plaintiffs expression of their opinions regarding Allegheny County government.
>
> 52.  The re-directing of the Plaintiffs' e-mail, undertaken at the behest of Onorato and Davin, and other persons presently unknown to the Plaintiffs, was also in an effort to prevent information containing facts requested by the several members of Allegheny County Council from reaching their intended recipients.
>                         . . .
> 56.  There was no reasonable basis for the re-directing of the Plaintiffs' e-mail.
>                         . . .
> 83.  The official conduct engaged in by the Defendants was intentionally directed toward the Plaintiffs . . . to discourage the Plaintiffs from engaging in a Constitutionally protected right, and in retaliation for exercise of those rights, namely their rights under the First Amendment of the United States Constitution to petition the government for redress of grievances.

16

(Doc. # 1 at ¶¶ 51-52, 56, 83.) Therefore, Plaintiffs have alleged facts sufficient for a Section 1983 claim to proceed against the individual Defendants Onorato and Devin based upon a First Amendment violation.

Further, as to Defendant Allegheny County, the Supreme Court has held that only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  In alleging that Defendant Onorato, the Chief Executive of Allegheny County and Defendant Davin, the Director of the Department of Economic Development, have blocked e-mails they have sent to other County officials, Plaintiffs have alleged a government custom which implicates rights guaranteed to them under the First Amendment of the United States Constitution. (See Doc. # 1 at ¶¶ 89, 98.) Consequently, they have alleged a cause of action against Defendant Allegheny County.

Accordingly, it is recommended that Defendants' Motion to Dismiss Count I be denied as to all Defendants.


**b. Sections 1985/1986**

Defendants assert that Plaintiffs' Section 1985 conspiracy claim is flawed by their failure to allege that Defendants'

actions were motivated by racial or class based animus, and because members of the same entity can not conspire with each other. (Doc. # 19 at 10-11.) Defendants further assert that claims based on Section 1986 should be dismissed because of Plaintiffs' failure to allege a cause of action under Section 1985(3). (*Id.* at 12.)

Plaintiffs argue that they qualify as a class of one, and the conspiracy between the individual Defendants and unknown persons was motivated by a class based animus designed to deprive them of the equal protection of the laws. (Doc. # 22 at 17-18.) Section 1985(3) provides:

> If two or more persons in any State or Territory conspire . . . , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons . . . the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A § 1985(3). A Section 1985(3) claim includes four
elements: a conspiracy which was "motivated by a racial or class
based discriminatory animus designed to deprive, directly or
indirectly, any person or class of persons to the equal
protection of the laws" and an act to further the conspiracy
which resulted in an injury or deprivation of another's rights or
privileges secured by citizenship. See *Lake v. Arnold*, 112 F.3d
682, 685 (3d Cir. 1997). Plaintiffs argue that they are a class
of one for equal protection purposes. (See Doc. # 22 at 18.) They
do not further identify their class and they cite no authority
for this novel theory. The case they cite, *Village of Willowbrook
v. Olech*, 528 U.S. 562 (2000) involved a Fourteenth Amendment
Equal Protection Clause claim, not a Section 1985(3) conspiracy
claim.  The Supreme Court has discussed the "class based animus"
requirement:

> To begin with, we reject the apparent
> conclusion of the District Court (which
> respondents make no effort to defend) that
> opposition to abortion constitutes
> discrimination against the "class" of "women
> seeking abortion." Whatever may be the
> precise meaning of a "class" for purposes of
> *Griffin*'s speculative extension of § 1985(3)
> beyond race, the term unquestionably connotes
> something more than a group of individuals
> who share a desire to engage in conduct that
> the § 1985(3) defendant disfavors. Otherwise,
> innumerable tort plaintiffs would be able to
> assert causes of action under § 1985(3) by
> simply defining the aggrieved class as those
> seeking to engage in the activity the
> defendant has interfered with. This
> definitional ploy would convert the statute

19

> into the "general federal tort law" it was
> the very purpose of the animus requirement to
> avoid.

*Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269 (1993). The Supreme Court's holding in *Bray* is instructive: a class is "something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray*, 506 U.S. at 269. Plaintiffs, as a class of one, are not a group that the Supreme Court would recognize as being subject to any legitimate class based animus which would support a Section 1985(3) claim. Therefore, it is recommended that the Section 1985(3) claim contained in Count II of Plaintiffs' complaint be dismissed.

Furthermore, in the absence of a valid claim for a Section 1985(3) violation, there can be no claim for failure to prevent a civil rights conspiracy violation under Section 1986. *See Bieros v. Nicola*, 839 F. Supp. 332 (E.D. Pa. 1993). Therefore, it is also recommended that the Section 1986 claim contained in Count III of Plaintiffs' complaint be dismissed.

## 2. Governmental Immunity[3]

---

[3] Plaintiffs state that they have not alleged state law claims against Allegheny County. (Docs. # 22 at 18.) Thus, Defendants' Motion to Dismiss on this issue will not be addressed.(See Doc. # 19 at 12.)

Defendants have asserted two theories in support of their claim that they are immune from the state law claims asserted against them. First, Defendants assert that Plaintiffs' state law defamation claims against Defendants Onorato and Davin in Counts IV and V must be dismissed because they are protected by the Pennsylvania Political Subdivision Tort Claims Act (PA PSTCA), 42 Pa. Cons. Stat. Ann. § 8546 (Doc. # 19 at 12.) The PA PSTCA provides absolute immunity to local agencies except for eight statutorily defined exceptions, which are inapplicable in this case. See 42 Pa. Cons. Stat. Ann. § 8542. In *Laverdure v. County of Montgomery*, 324 F.3d 123 (2003) the Court held that a county commissioner, as a high public official, was entitled to absolute immunity under Section 8546. (Doc. # 19 at 13.) But Plaintiffs argue that section does not apply because their defamation claims against Onorato and Davin involve wilful misconduct, and thus, the Pa PSTCA is unavailable to them. (Doc. # 22 at 19, citing 42 Pa. Cons. Stat. Ann. § 8550.) This provision states:

> In any action against a local agency or
> employee thereof for damages on account of an
> injury caused by the act of the employee in
> which it is judicially determined that the
> act of the employee caused the injury and
> that such act constituted a crime, actual
> fraud, actual malice or willful misconduct,
> the provisions of sections 8545 (relating to
> official liability generally), 8546 (relating
> to defense of official immunity), 8548
> (relating to indemnity) and 8549 (relating to
> limitation on damages) shall not apply.

42 Pa. Cᴏɴs. Sᴛᴀᴛ. Aɴɴ. § 8550 (West 1998). The Court of Appeals for the Third Circuit has discussed the PA PSTCA and the evidence necessary to find willful misconduct under Section 8550:

> Under the Act, individual defendants are immune from liability for acts within the scope of their employment to the same extent as their employing agency . . . except that they are liable if their conduct amounts to actual fraud, crime, actual malice or willful misconduct. . . . "Willful misconduct," as used in section 8550, requires evidence that the defendants actually knew that their conduct was illegal.

*Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 600-601 (3d Cir. 1998)(citations omitted, emphasis added). "Willful misconduct" is described in 42 Pa. Cᴏɴs. Sᴛᴀᴛ. Aɴɴ. § 8336(d) as:

> **(d) Gross negligence or willful misconduct.**
> –Nothing in this section shall be construed to limit or otherwise affect or preclude the liability of any person resulting from such person's gross negligence or intentional misconduct. Reckless, willful or wanton misconduct shall constitute gross negligence.

In *Ford v. Johnson*, 899 F. Supp. 227 (W.D. Pa. 1995) Chief Judge Ambrose held that an allegation of "gross negligence" sufficiently alleged "willful misconduct" to prevent grant of the motion to dismiss filed by, *inter alia*, the defendant county commissioners. Plaintiffs have alleged "gross, wanton, reckless and outrageous conduct." (Compl., Doc. #1 at ¶¶ 133, 138, 145, 146, and 156.)  Therefore, Plaintiffs have sufficiently alleged facts which overcome the immunity available under Section 8546

22

and, as to Defendants' immunity under Section 8546, their motion to dismiss Counts IV - VIII would be denied but for the following section which addresses the common law doctrine of High Public Official Immunity.

Next, Defendants argue that the common law doctrine of High Public Official Immunity exempts them from suit for defamation related claims. (Doc. #19 at 13.) Plaintiffs argue that Pennsylvania's High Public Official Immunity has been abrogated by the PA PSTCA and cite non-controlling federal case law as support for this argument.[4] (Doc. # 22 at 20.) The Pennsylvania Supreme Court has said that the Pa PSTCA does not abrogate high public official's absolute immunity to civil suits for defamation related claims. *Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996), accord *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 566 (Pa.Cmwlth. 2005). Federal courts apply the law of the state as announced by the highest court when determining issues of state substantive law.  See *Erie R.R. v. Tompkins*, 304 U.S.   64 (1938); see also *Harris v. Pennsylvania Turnpike Com.*, 410 F.2d 1332, 1334-35 (3d Cir. 1969).(Immunity from tort liability is a question of state law, and the federal courts are bound to apply

---

[4] Although Defendants cite Chief Judge Ambrose opinion in *Ford v. Johnson*, 899 F. Supp. 227 (W.D. Pa. 1995) in this section, in denying the defendants' motion to dismiss based on official immunity, she was actually addressing the immunity available under Section 8550. She did not address the common law doctrine of High Public Official Immunity addressed by Defendants in this section of their brief.

the law as announced by the Pennsylvania Supreme Court.)
Therefore we will apply the law of Pennsylvania. The Pennsylvania
Supreme Court explained that the doctrine of absolute privilege
for high public officials:

> [I]s unlimited and exempts a high public
> official from all civil suits for damages
> arising out of false defamatory statements
> and even from statements or actions motivated
> by malice, provided the statements are made
> or the actions are taken in the course of the
> official's duties or powers and within the
> scope of his authority, or as it is sometimes
> expressed, within his jurisdiction.

*Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996). The purpose
for the absolute immunity provided to high public officials is
"to foreclose the possibility of suit." *Osiris Enterprises*, 877
A.2d at 567. Pennsylvania has determined that, "[a]bsolute
immunity is thus a means of removing any inhibition which might
deprive the public of the best service of its officers and
agencies." *Id.* at 567. However, it has been explained that "given
the great potential for harm, the privilege must be limited to
those statements and actions which are in fact 'closely related'
to the performance of those official duties." *Id.*, quoting
*McCormick v. Specter*, 275 A.2d 688, 689 (Pa. Super. Ct. 1971).
Therefore, a court must determine: 1) whether each Defendant
qualifies as a "high public official"; and 2) "whether
Defendants' allegedly actionable behavior was made in the course
of their official duties." *Osiris Enterprises*, 877 A.2d at 567.

24

To decide this second element, the court evaluates certain factors to "determine whether the statements are closely related to the official's legitimate duties: (1) the formality of the forum in which the words were spoken or published; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance." *Id.* at 568.

In *Lindner*, the court stated:

> In *Montogmery*, we explained that the "determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions.

*Linder*, 677 A.2d at 1198, quoting from *Montgomery v. City of Philadelphia*, 140 A.2d 100, 104 (Pa. 1958). The court added:

> This Court made clear in *Montgomery* that, absent statutory classification, the parameters establishing "high public official" status would be delineated by the judiciary on a case-by-case basis, rather than establishing a bright-line "of demarcation, if any there be, which separates offices which are protected by absolute privilege from those which are not."

*Linder*, 677 A.2d at 1198, quoting *Montgomery,* 140 A.2d at 105. The defense of official immunity is an affirmative defense which must be established by the defendants. Section 8546 provides:

> In any action brought against an employee of a local agency for damages . . . the employee may assert on his own behalf, or the local agency may assert on his behalf:
> (1) Defenses which are available at common law to the employee.

25

42 Pa. Con. Stat. Ann. § 8546, *see also Gomez v. Toledo*, 100 S. Ct. 1920 (1980). It is noted that the *Linder* case involved a motion for summary judgment. The record is not sufficiently developed to determine whether Defendants are entitled to the High Public Official Immunity upheld in *Linder* and *Osiris*. Therefore as to Counts IV, V, VI, VII and VIII it is recommended that Defendants' motion to dismiss be denied without prejudice.

## III. **CONCLUSION**

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss be granted as to Counts II, III, of the Complaint; denied as to Count I; and denied without prejudice as to Counts IV, V, VI, VII and VIII.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

*/s/ Ila Jeanne Sensenich*
ILA JEANNE SENSENICH
United States Magistrate Judge

26

Dated: May 19, 2006

cc:   The Honorable Donetta W. Ambrose
      United States District Judge

      Gianni Floro, Esquire
      510 Third Avenue
      Pittsburgh, PA 15219

      Michael H. Wojcik, Esquire
      Caroline Liebenguth, Esquire
      Allegheny County Law Department
      300 Fort Pitt Commons
      445 Fort Pitt Boulevard
      Pittsburgh, PA 15219