IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROCK FERRONE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 05-303 |
| | ) | |
| v. | ) | Chief Judge Ambrose |
| | ) | Magistrate Judge Caiazza |
| DAN ONORATO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 68) be granted regarding the Plaintiffs' federal claims, and that the District Court decline to exercise supplemental jurisdiction over the state law claims.

**II. REPORT**

**BACKGROUND**

Rock Ferrone and the company for which he is the managing member and president (collectively, "Ferrone" or "the Plaintiff") has brought this Section 1983 action against Allegheny County, its Chief Executive Dan Onorato ("Onorato"), and its Director of Economic Development Dennis Davin ("Davin"). *See generally* Pls.' Statement of Facts (Doc. 73) at ¶ 3. These parties (collectively "the Defendants") and others were the subject of another lawsuit brought by Ferrone in this District under Civil Action No. 05-484.

In 05-484, the Plaintiff stated a series of state and federal claims against the Defendants, alleging among other things that they improperly prevented and/or delayed the release of loan

disbursements covering the development costs of an airport and business park in West Deer Township, Pennsylvania ("the Airport project"). *See generally* Am. Compl. in 05-484 (Doc. 43). Throughout the pleadings in that case are allegations the Defendants conspired against Ferrone in an effort to forestall and/or defeat local funding and support for the project. *See id.* After several rounds of motions practice, all of the Plaintiff's federal claims were dismissed, and the court declined to exercise supplemental jurisdiction over his state law claims. *See* Order in 05-484 dated Jan. 19, 2007 (Doc. 147). Those rulings are now before the Court of Appeals for the Third Circuit. *See* Notice of Appeal in 05-484 (Doc. 148).

In this action, the Plaintiff likewise seeks an award of "damages [he] suffered as a result of being effectively prevented from getting . . . redevelopment project finances," a figure his economic expert places at $12,700,000.00. *See* Pls.' Opp'n Br. at 1; Pls.' Facts at ¶ 113. Ferrone claims these damages were incurred when, during the period of January 4 to February 8, 2005, fourteen emails sent by him and his secretary to County Council members and other officials were "re-directed" to agents of Onorato and Davin for "review, dissemination and/or censoring," so that they could be "examine[d] and utilize[d]" for the Defendants' own purposes and to "advise private parties" of the content so they "could reap private gain." *See* Compl. (Doc. 1) at ¶¶ 50, 54-55; *see also* Defs.' Br. (Doc. 69) at 10-13 (identifying fourteen emails that did not reach their intended recipients).

As shown in the Defendants' summary judgment papers, what actually transpired is far different than the fantastical scheme predicted, on information and belief, in the Plaintiff's Complaint. A timeline of the events, not meaningfully disputed, is as follows:

8/04           As early as August 2004, Ferrone began sending automated, unsolicited emails from the address "press@rock-port.com" to county employees regarding the Airport project. *See generally* Ex. bates-stamped AC/RF-334 (filed under appendix hereto).[1] The email came from the Plaintiff's "Press Room," identified as "Rock Airport of Pittsburgh, LLC's News scanner. It will scan the common search engines daily and send any articles that pertain to or may affect the Airport [project] to our database of over 15,000 local contacts." *See* copy of email, filed under Doc. 76 at pg. 50 of 55. The "Press Room" emails had no mechanism for, or instructions regarding, the recipients' unsubscribing from the service. *See id.*; *see also* Defs.' Br. at 4 (citing record evidence).

8/23/04        Davin noted his receipt of a "Press Room" entry regarding John Travolta's home (*see id.*), identifying the actor as "the potential type of clientele that would be interested in purchasing land for development in the Rockpointe Business Park." *See* Pls.' Opp'n Br. at 7 n.1. Davin forwarded the email to his subordinates, with the message: "Please have all of our staff taken off this wire. It does not pertain to business and there is no value to receiving these updates." *See* Doc. 76 at pg. 50 of 55. In response, staff in the County's Department of Computer Services ("DCS") confirmed that "Press@rock-port.com" would be blocked. *See* Pls.' Facts at ¶ 20 (citing record evidence).

9/04-10/04     DCS's records reveal that, on three separate occasions, unsolicited Press Room mailings were blocked as "[m]essage[s] from an email address marked as a spammer." *See* Ex. bates-stamped AC/RF-334 to 335 (filed under appendix hereto).

10/19/04       At a regular meeting of County Council, Ferrone and several of his supporters spoke in favor of the Airport project. *See* Defs.' Br. at 6 (citing record evidence).

---

[1] Certain documents referenced in the parties' briefing were inadvertently excluded from their court filings. Upon chambers' request, counsel have provided the documents, which are made part of the record through the appendix to this Report.

| | |
|---|---|
| 11/19/04 | On this date, the Plaintiff began sending unsolicited emails to County employees, through "info@thewrongdecision.com." *See generally* Ferrone Dep. Ex. 52 (filed under appendix hereto); *see also* Dep. Tr. of R. Ferrone (filed under Doc. 69-4) at 180 ("wrongdecision" is "a site that I [Ferrone] own") . As the November 19th "press release" announced, "[t]he new watch-dog organization, Citizens for Exposing Corruption in Allegheny County[,] . . . today announced the creation of their website [referenced above], which will act as a collecting-point for information to expose corruption in [the] County." *Id.*[2] Like Press@rock-port.com, the "wrongdecision" emails did not have a mechanism for, or instructions regarding, the recipients' unsubscribing from the service. *See* Defs.' Br. at 4 (citing record evidence). |
| 11/24/04 | County Council convened a meeting of its Committee on Economic Development, a substantial portion of which was dedicated to Ferrone. *See id.* at 6 (citing record evidence). The Plaintiff made a lengthy presentation. *Id.* |
| 11-12/04 | During these months, Ferrone worked with two Council members on a "Sense of Council Motion" expressing support for the Airport project. *See id.* (citing record evidence). |
| 12/04 | In response to requests by his staff, Davin asked that DCS block the "wrongdecision" emails as "spam." *Id.* (citing record evidence). |
| 1/4/05 | On this day, and after the Plaintiff and his supporters spoke, the Council passed a Motion "supporting economic development in the Allegheny Valley region by requesting that [the Defendants] meet and work with Rock Airport of Pittsburgh to develop the [Airport project] and, further, protect the investment of public funds already committed . . . ." Pls.' Facts at ¶ 21 (citing record evidence). |

---

[2] The court's current review of the website, "thewrongdecision.com," reveals that nearly all of its content has been dedicated to Ferrone's disputes with the Onorato administration. *See id.* at "news" page. Although the news page does contain some more recent entries, the website indicates it was "[l]ast modified[ on] 03/16/05." *Id.*

| | |
|---|---|
| 1/5/05 | For reasons unclear from the record, County staff again started receiving unsolicited emails from Press@rock-port.com. *See generally* email filed under Doc. 75-29 at pg. 9 of 9. After receiving complaints from recipients, Davin asked his subordinates: "Please have [DCS] block this email address from everyone in this department. Let me know if they refuse." *See id.*; *see also* Dep. Tr. of D. Davin at pgs. 18-19 (testimony regarding recipient complaints) (filed under appendix hereto). In response to the request that the email address be "blocked from everyone in [the] Economic Development" Department, a DCS agent stated: "We had taken steps in December to block this, but they have changed their e-mail address. Effective immediately, our mail system will reject mail from Press@rock-port.com -- and -- @rock-port.com." *See* email filed under Doc. 75-29 at pg. 8 of 9. |
| 1/7/05 | Ferrone sent an email to the County Solicitor stating: "CCAC is out for now. Rest assured that I know first hand that they do have other information. We will be pursuing it at a later date if this does not come to a resolution. [Solicitor], not that you will take it, but my advice to you is to call [my lawyer] ASAP." *See* Defs.' Br. at 10 (quoting record evidence). Unbeknownst to Davin or Onorato, the "spam" block placed on the Plaintiff's email was too broad, as the "@rock-port.com" command intercepted Ferrone's personal email, sent from "Rock@Rock-Port.com." Defs.' Br. at 5 (citing record evidence). Also unbeknownst to the Defendants, the County's "spam" filter was not sophisticated enough to perform blocks on the department level and, despite Davin's requests that they be restricted to his Department, the blocks in fact were effectuated County-wide. *Id.* Thus, the County Solicitor did not receive Ferrone's email.[3] |
| 1/11/05 | The DCS blocked Ferrone's email to Councilman Vince Gastgeb, stating: "Hello Councilman Gastgeb, I was hopeful you could give me a call when you get a chance. I can be reach[ed] on my cell phone at (412) [edited by court]. Or the number below. I look forward to talking to you soon." Defs.' Br. at 11 (quoting record evidence). When Mr. Gastgeb did not respond, the Plaintiff telephoned him but received no response. *See* Dep. Tr. of R. Ferrone (attached under Doc. 69-4) at 188. |

---

[3] Although Ferrone disputes that Onorato and Davin were unaware of the scope of interception effectuated by the County's spam blocker, the Plaintiff has introduced no evidence that the Defendants blocked his personal emails intentionally or with reckless disregard for his constitutional rights. *See* discussion *infra* in Analysis section.

1/25, 1/27/05   Ferrone's secretary emailed, and the DCS automatically blocked, two proposed agendas for a meeting between the Plaintiff and Davin scheduled for January 28th.  Defs.' Br. at 11 (citing record evidence).

1/4-1/27/05   Between Council's January 4th meeting and the Plaintiff's January 28th meeting with Davin, and the blocked emails notwithstanding, Ferrone remained in contact with Davin and Maurice Strul ("Strul"), the Department of Economic Development employee assigned to the Plaintiff's loan.  *See* Dep. Tr. of R. Ferrone (attached under Doc. 69-11) at 40-41.

1/28/05   As scheduled, Ferrone and Davin met to discuss the Airport project; the Plaintiff left the meeting believing progress had been made.  Defs.' Br. at 9 (citing record evidence).

1/31/05   DCS blocked an email from Ferrone to Davin asking, among other things, that he withdraw an affidavit filed in a case pending before the Pennsylvania Superior Court.  *See* Ferrone Dep. Ex. 37 (filed under Doc. 69-4 at pg. 27 of 38).

2/3/05   Another email from Ferrone to Davin was blocked:  "Hello Director, I haven't received any comment from you on either issue that we discussed.  If you could advise me of what you and your Department's intentions are it would be helpful.  Thank you[.]"  *See* Ferrone Dep. Ex. 38 (filed under Doc. 69-4 at pg. 29 of 38).

2/4/05   Ferrone again attempted to email Davin:  "Dennis, I will assume that you are not going to respond to my phone calls and e-mails.  As usual we will be moving in a different direction."  *See* Ferrone Dep. Ex. 42 (filed under Doc. 69-4 at pg. 34 of 38).  At or around the same time the Plaintiff sent this email, he telephoned Davin and left a message for him to call.  *See* Dep. Tr. of R. Ferrone (attached under Doc. 69-4) at 264.

2/4-2/7/05   Ferrone sent a series of messages to Strul, in response to Strul's email indicating the Southwestern Pennsylvania Commission had requested certification that Keystone Opportunity Zone ("KOZ") beneficiaries like the Plaintiff were current in their local tax payments.  *See* Ferrone Dep. Ex. 39 (filed under Doc. 69-4 at pg. 30 of 38).  Strul noted that there may have been a delinquency in school taxes owed on Ferrone's home.  *Id.*  In two of his emails, Ferrone responded that his attorney was "working on" "an ongoing

|        |                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|--------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|        | tax question." *Id.*; *see also* Ferrone Dep. Ex. 40 (filed under Doc. 69-4 at pg. 32 of 38) (same). In the third email, the Plaintiff stated his belief that "there [was] a provision in the KOZ legislation" excluding tax issues so long as they were "under dispute," which Ferrone claimed his was. *See* Ferrone Dep. Ex. 41 (filed under Doc. 69-4 at pg. 33 of 38). |
| 2/7/05 | When the Plaintiff did not hear back, he telephoned Strul for an update regarding the KOZ issue. *See* Pls.' Facts at ¶ 36. When Strul indicated he had not received Ferrone's emails, the Plaintiff telephoned Davin to see if he had received them. *See id.* at ¶ 40. Upon learning he had not, the two attempted to exchange emails and Davin's was received by Ferrone but Ferrone's was not received by Davin. *Id.* at ¶ 46. According to the Plaintiff, Davin stated: "This might have been caught in the filter that was put on by Dan [Onorato] that was to block your blast emails." *Id.* at ¶ 98 (quoting Dep. Tr. of R. Ferrone). |
| 2/7-2/8/05 | Ferrone sent two "test" emails, the first to County Council members and the second to the Council's chief of staff. *See* Defs.' Br. at 12-13 (citing record evidence). The emails were blocked and, on February 8th, DCS removed the domain name "@rock-port.com" from the County's "spam" filter. *See generally* Defs.' Br. at 7. |

## ANALYSIS

### A. The Plaintiff's First Amendment Claim

Although Ferrone has alleged multiple constitutional claims, both the court and the parties have understood his allegations to best fit under the First Amendment's Petition Clause. *See, e.g.*, Report and Recommendation issued by previous Mag. Judge in this case (Doc. 23) at 8-17 (finding Plaintiff's Section 1983 claim survived Defendants' 12(b)(6) Motion based on Petition Clause only), *adopted by Dist. Court* on Jun. 13, 2006 (Doc. 24); *compare also, e.g.*, Pls.' Opp'n Br. at 3 ("[t]he true gravamen of the Plaintiffs' Complaint is that the Constitution is indubitably implicated when a state official blocks, intercepts, and/or redirects any email sent by

a private party that was intended for other elected officials"; Defendants "prevent[ed] the Plaintiffs from being able to communicate with, inter alia, the members of County Council") *with* Gemmell v. Hall, 2007 WL 2085327, *7 (W.D. Pa. Jul. 19, 2007) ("the First Amendment's clause granting the right to petition . . . for grievances . . . extends to all departments of the Government") (citation to Supreme Court precedent and internal quotations omitted).  Thus, while the court will also address the Plaintiff's remaining federal claims, its focus will be on the First Amendment right to petition.

There is a relative dearth of legal authority addressing substantive claims brought under the Petition Clause*.  See generally The First Amendment Right to Petition Government for a Redress of Grievances:  Cut from a Different Cloth,* 21 Hastings Const. L.Q. 15, 16 (Fall 1993) ("[o]f [the First Amendment's] expressive rights, the right to petition has engendered the least discussion among litigants, judges, and scholars," and it "is rarely invoked by litigants as a substantive constitutional right") (footnotes omitted).  The Supreme Court has made clear, however, that the "right to petition is cut from the same cloth as the other guarantees [under the First] Amendment," and thus "there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions." McDonald v. Smith, 472 U.S. 479, 482, 285 (1985).

Like other claims asserted under the First Amendment, a petition clause plaintiff must show the defendants acted with "[r]eckless or intentional indifference to [his] constitutional rights"; mere negligence will not suffice.  Woods v. Lemonds, 804 F. Supp. 1106, 1109 (E.D. Mo. Sept. 28, 1992) (citation omitted), *aff'd*, 991 F.2d 802 (8th Cir. Apr. 9, 1993) (table); *accord* Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006) (Supreme Court holding that "an

official's negligent act does not implicate the Due Process Clause" extends to First Amendment right to petition because, "[j]ust as 'deprivation' [referenced in the Fourteenth Amendment] suggests an intentional denial, an 'abridgement' [under the First Amendment] connotes a conscious act [rather than a merely negligent one].") (citing and quoting Pink v. Lester, 52 F.3d 73, 76-77 (4th Cir. 1995)) (some internal quotations omitted, some alterations in original); *see also* Johnson v. U.S. Atty. Gen'l, 2006 WL 1759619, *2 (3d Cir. Jun. 28, 2006) (citing with approval Pink, and concluding that right to access courts claim under First Amendment requires more than negligence; "to permit recovery for negligent acts would greatly expand the scope of the First and Fourteenth Amendments") (other citations omitted). Indeed, the Plaintiff himself understands his obligation to show a deliberate deprivation. *See* Pls.' Opp'n Br. at 18 ("an element of the Plaintiffs' First Amendment claim is to show intent on the part of the Defendants").

Another of the Plaintiff's burdens is to demonstrate actual harm or prejudice resulting from the alleged deprivation. Kochi v. Johnson, 1995 WL 469395, *1 n.1 (4th Cir. Aug. 9, 1995) (right to petition claim was "subject to summary dismissal for failure to provide factual support or allege any resultant specific harm") (citations omitted); *accord* Carney v. Hargrave, 2006 WL 3825130, *3 (D. N.J. Dec. 22, 2006) ("the [p]laintiff must show that she exercised her right to petition . . . governmental authorities for redress of grievances and that she was a victim of . . . action [that] caused harm to her protected interests") (citation omitted); Fernandez v. Armstrong, 2005 WL 733664, *8 (D. Conn. Mar. 30, 2005) (holding same, citation omitted). The Third Circuit Court also has recognized this principle, most obviously through its discussion of "access to court" claims brought under the Petition Clause. *Compare* Anderson v. Davila,

125 F.3d 148, 161 (3d Cir. 1997) ("an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances") (citations omitted) *with* Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) (claim for denial of court access requires evidence of actual injury) (citation omitted), *cert. denied*, -- U.S. --, 127 S. Ct. 1822 (2007); *see also* Foster v. PHRC, 2005 WL 2891368, *2 (3d Cir. Nov. 3, 2005) (applying injury requirement to court access case, outside context of prison litigation) (citation omitted).

As just seen, the Plaintiff's right to petition claim requires him to show both intent and harm/prejudice. Ferrone can establish neither.

Regarding intent, the record establishes that Defendant Davin requested DCS to block Ferrone's automated, unsolicited emails through his websites "press@rock-port.com" and "thewrongdecision.com." *See* discussions *supra*. The Defendants have put forth undisputed evidence that, (a) Davin made his requests based on the complaints of his staff, (b) his request was limited to the above-referenced sites, and (c) he asked only that his Department no longer receive the automated "spam." *Id.*

There is no competent evidence that Davin knew DCS's inclusion of the unrequested "@rock-port.com" command would capture Ferrone's personal emails, nor that the spam blocker would be effective for all County employees. *See id.*[4] And though DCS arguably may have been negligent in casting its "spam" net too broadly, the Plaintiff has introduced no evidence showing

---

[4] Indeed, Davin's apparent surprise in learning that his emails were reaching Ferrone, but Ferrone's were not reaching him, only further supports the abundantly reasonable conclusion that the blocking of the Plaintiff's personal emails was entirely unintentional. Although the District Court need not rely on this evidence to grant summary judgment, it only further supports the Defendants' case that an innocent mistake was made.

that the County's lower-level employees acted with intent or reckless disregard for Ferrone's constitutional rights. This is a case of simple mistake, not intentional deprivation.

Nothing in Ferrone's opposition papers demonstrates the contrary. Much of the Plaintiff's briefing consists of alarmist exaggeration bearing no relationship to the facts learned in discovery. *See, e.g.*, Pls.' Opp'n Br. at 5-6 (Onorato, Davin, and "their co-conspirators . . . collud[ed] to prevent the Plaintiff[] from engaging in any further communications with County Council because of the favorable position that they had taken with the Plaintiffs and the [Airport] project"); *id.* at 13 (making unsubstantiated claim that emails to County Council were "inspected and censored by the [Onorato] administration first").[5]

Though counsel suggests that DCS "specifically advised Davin that [e]mail would be rejected from anyone who sends mail from @rock-port.com," the documentary evidence relied on by the Plaintiff shows nothing of the sort. *Compare* Pls.' Opp'n Br. at 18 (citing exhibit bates-stamped AC385-86) *with* Ex. AC385-86, filed under Doc. 75-29 at pgs. 8-9 (email string, revealing Davin's request to have "Press@rock-port.com" blocked from "[his] department," and response from DCS agent to Davin's subordinate indicating that both "Press@rock-port.com" and "@rock-port.com" would be blocked). Even assuming Davin knew or should have known

---

[5] Ferrone's suggestion that the Defendants prevented him from communicating with County Council members is particularly lacking evidentiary support. In fact, only one of the fourteen emails blocked by DSC's spam program, other than the "test" email transmitted after the parties discovered the problem, was sent to a County Council member. *See* discussion *supra* regarding Pl.'s email to Mr. Gastgeb on Jan. 11, 2005. The Plaintiff's own testimony reveals that he telephoned Mr. Gastgeb not long after sending the email and received no response. *See id.* There was no meaningful interference with Ferrone's ability to communicate with the Council members, and this fact completely undermines the central premise of his lawsuit. *See* discussions *supra*; *see also* discussion *infra* (finding no evidence of actual prejudice or harm resulting from Defendants' inadvertent blocking of Plaintiff's personal emails).

that "@rock-port.com" also would be blocked, there is no evidence he possessed sufficient technical expertise or background knowledge to understand and/or predict that this command would prevent Ferrone's personal emails from making their way through the County's system. At best, the Plaintiff's evidence may establish negligence on the part of Davin and/or his subordinates, but not reckless indifference or intent.

The only other evidence of intent offered by the Plaintiff is the temporal proximity between the blocking of Ferrone's email and the County Council's passage of its Motion supporting the Airport project. *See* Pls.' Opp'n Br. at 9-10. This argument ignores the fact that Davin twice previously requested the blocking of automated and unsolicited emails sent from "press@rock-port.com" and "thewrongdecision.com." *See* discussion *supra*. Counsel also has failed to refute the Defendants' evidence that the blocking requests were preceded by employee complaints; nor does the Plaintiff's theory account for his websites' providing no useful guidance or mechanism through which a recipient could unilaterally terminate future transmissions. *See id.*[6]

---

[6] As for Davin's decision to block the Plaintiff's unsolicited, automated emails from "press@rock-port.com" and "thewrongdecision.com," counsel has identified no legal authority supporting the notion that this was a constitutional violation. Indeed, the court has serious reasons to question whether any First Amendment rights were implicated by Ferrone's use of computer-automated technology to forward articles written by third-parties to persons not requesting them. Given the Plaintiff's lack of knowledge regarding the actual content of the articles obtained from his program's "scan [of] the common search engines . . . pertain[ing] to or affect[ing] the Airport [project]," any claim of protected "speech" would seem tenuous at best. The court also notes that Ferrone's use of "spam" messages, not containing a mechanism and/or information regarding how to unsubscribe, is at odds with the spirit and intent of federal and Pennsylvania legislation governing the permissible use of unsolicited commercial email messages. *See* 15 U.S.C. §§ 7704(a)(3)(A) & (A)(i) (deeming it "unlawful for any person" to transmit such email "that does not contain a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that . . . a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of

For all of these reasons, the Plaintiff has failed to present evidence that Davin or his subordinates intentionally or with deliberate indifference violated his constitutional rights.[7]

Even if the Plaintiff could state a First Amendment violation, he has no evidence of actual prejudice or harm. Ferrone's greatest concern, that he was denied access to County Council, has no basis in fact. *Cf.* Pls.' Opp'n Br. at 1 (Plaintiff seeks damages "suffered as a result of being effectively prevented from" communicating with County Council regarding redevelopment finances). Aside from his test message to Council members the day before DCS lifted the block, the record reveals only one blocked email sent to a Council member, Mr. Gastgeb, on January 11, 2005. *See* discussion *supra*. When Mr. Gastgeb did not reply, the Plaintiff telephoned him but received no response. *See id.* This surely was no fault of the Defendants, and there is no evidence that the email blockage had any discernable effect on the Plaintiff's

---

Internet-based communication requesting not to receive future" messages); 73 Pa. Cons. Stat. § 2250.3(a)(4) (spam email impermissible if it "fails to operate a valid sender-operated return e-mail address or toll-free telephone number that the recipient of the unsolicited documents may e-mail or call to notify the sender not to transmit further unsolicited documents"). In any event, neither party has presented meaningful legal analysis regarding the permissible use of "spam," and the court should not address the issue in a vacuum. *See* Auto Owners Ins. Co. v. LA Oasis, Inc., 2005 WL 1313684, *14 (N.D. Ind. May 26, 2005) ("courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments the parties themselves do not adequately support") (citation omitted). Finally, even assuming the Defendants' blocking of "spam" at the request of County employees implicates the Constitution, the Plaintiff's claims fail for his inability to demonstrate prejudice or harm. *See* discussion *infra*.

[7] The evidence regarding Defendant Onorato is even weaker. There is no indication that Onorato was personally involved in the block requests. The best the Plaintiff can muster is his own testimony that, when Davin and Ferrone discovered the email problem, Davin allegedly said, "[t]his might have been caught in the filter that was put on by Dan [Onorato] that was to block your blast emails." *See* discussion *supra*. Irrespective of Davin's alleged statement, the record irrefutably establishes it was Davin's request, not Onarato's, that resulted in the blocking of emails from "press@rock-port.com" and its derivatives. Given the totality of the evidence discussed above, Davin's alleged misstatement is insufficient to establish that he or Onorato intentionally blocked Ferrone's personal emails from reaching any County employee.

Airport project.

The evidence also shows that, the blocked emails notwithstanding, Ferrone remained in regular contact with both Council members and Davin's department. *See id.* (noting Ferrone's ongoing contact with Council members regarding proposed Sense of Council Motion, his discussions with Davin and Strul, and his attendance at meetings with Davin and Council). Speculation aside, there is not one shred of evidence that Ferrone or his Airport project was harmed or prejudiced by the email incident. *See* discussions *supra*; *see also* Dep. Tr. of R. Ferrone (filed under Doc. 69-4) at 259-60, 262 (admitting that Plaintiff's KOZ status, the only time-sensitive issue addressed in his blocked emails, had not been lost "as far as [he] kn[ew]").

Finally, the court finds particularly telling the purported injury identified in the Plaintiff's opposition papers. As noted above, Ferrone seeks an award of "damages . . . suffered as a result of being effectively prevented from getting . . . redevelopment project finances," a figure he places at $12,700,000.00. *See* Pls.' Opp'n Br. at 1; Pls.' Facts at ¶ 113. This is the same type of injury alleged in Civil Action 05-484 and, aside from the fact that tying such damages to the email incident requires pure speculation, his efforts to pursue the same remedy in both actions runs afoul of the rule against potential double recovery.

In sum, the Plaintiff makes far too much of the Defendants' inadvertent, if negligent, blocking of fourteen emails over the period of approximately five weeks. And while the email incident <u>may</u> have some relevance in his other lawsuit, it does not support a sustainable action under the First Amendment.[8]

---

[8] The only other First Amendment issue is Plaintiff counsel's efforts to shoehorn Ferrone's allegations into a retaliation claim. *See* Pls.' Opp'n Br. at 14 (suggesting Plaintiff's "act of sending an email to an elected official is a protected First Amendment right,"

### B.     Due Process

The Plaintiff posits that the email blocking "was done with the purpose of eventually depriving [him] of certain property interests [he] possessed by interfering with the necessary steps that needed to be taken to maintain those property interests." Pls.' Opp'n Br. at 19. The court must presume that Ferrone refers to his interest in the Airport project, and the court already has ruled unfavorably on this issue in Civil Action 05-484. *See* Doc. 147 in 05-484 (dismissing with prejudice Plaintiff's Due Process claim). That decision is currently on appeal, and it would be inappropriate to relitigate the issue here.

As observed above, moreover, any claim that the email incident harmed or prejudiced the Plaintiff's rights in connection with the Airport project is entirely speculative and invites an impermissible double recovery.

The Plaintiff also claims a liberty interest in his "ability to freely speak and petition [his] elected representatives" for redress. Pls.' Opp'n Br. at 19-20. Counsel identifies no legal authority in support of this theory, and it merely restates the First Amendment claims already rejected.

---

Defendants retaliated by "blocking the Plaintiffs' email," and such conduct was "sufficient to deter a person of ordinary sensibilities from exercising his constitutional rights"). Although the Plaintiff likely has made this argument only in an attempt to mesh the facts here with the bulk of First Amendment jurisprudence, there is an obvious theoretical disconnect between the retaliation cases and this one. There is no meaningful allegation that Ferrone has been deterred from subsequent First Amendment activity; rather, he complains that the email blocking, in and of itself, was constitutionally impermissible. Perhaps the simplest way of putting the issue to rest is to reiterate the court's prior conclusions, namely that the Defendants had no knowledge or intention of blocking Ferrone's personal emails, nor did they exhibit a reckless disregard for his constitutional rights. The Defendants did not "retaliate" against the Plaintiff, and this theory is without merit.

Finally, the Plaintiff's reliance on the substantive due process doctrine fails for his inability to show conduct "that shocks the conscience and violates the decencies of civilized conduct." *See generally* In re Pressman-Gutman Co., Inc., 459 F.3d 383, 401 (3d Cir. 2006) (citations and internal quotations omitted). As should be evident from the discussions above, the Defendants' conduct falls well short of the applicable legal standards.

### C. Equal Protection

The Plaintiff's "class of one" claim fails because he has identified no one "similarly situated" who was treated differently and/or that the difference in his treatment lacked a rational basis. *See generally* Mosca v. Cole, 2007 WL 470505, *5-6 (3d Cir. Feb. 14, 2007) (affirming entry of summary judgment because plaintiff failed to identify similarly situated individual(s)) (citations to binding authority omitted). Although Ferrone has put forth evidence that other business owners utilized email to communicate with the County regarding the Airport project, *see* Pls.' Facts at ¶ 17, he has identified no one else who sent automated, unsolicited emails to Davin's Department, with no mechanism to unsubscribe, and that resulted in employee complaints. Even assuming similar situation, the Defendants have identified a rational basis for the difference in treatment, namely Ferrone's "spamming" activity.

### D. Fourth Amendment Seizure

The Plaintiff claims that the Defendants conducted an "unreasonable search or seizure" of his emails "when they intercepted, read, and censored the email communications . . . intended for other members of County government." Pls.' Opp'n Br. at 23-24. As seen above, the Plaintiff has provided no evidentiary support for this conspiratorial theme. *See* discussions

*supra*. In any event, counsel fails to identify legal authority supporting the proposition that a government entity's use of spam blocking technology works an unlawful seizure of email content. The undersigned's independent review of the law has revealed no supportive authority, and the Plaintiff's Fourth Amendment claim is without basis.[9]

### E.      The Plaintiff's Discovery Grievances and Allegations of Spoliation

Throughout his opposition papers, the Plaintiff levels charges that the Defendants engaged in the deliberate spoliation of evidence. *See, e.g.*, Pls.' Opp'n Br. at 2 (during discovery, Defendants "made every effort to thwart the Plaintiffs in their [search for] the truth" and "attempt[ed] to cover up their illegal conduct") *and id.* at 11 ("[b]ased upon the Defendants' intentional spoliation of . . . evidence, the Plaintiffs have only been able to access a fraction of what may have actually occurred in this matter"). The only citation provided for these very serious accusations is counsel's repeated reference to the Plaintiff's previous "Motion to Declare Documents Not Confidential." *See, e.g., id.* at 2, 11. The court already has ruled on said Motion, *see* text-only Order dated August 6, 2007, and nowhere in it or the attachment thereto did the Plaintiff allege spoliation, provide meaningful evidence regarding the same, or seek appropriate sanctions or to compel production. *See* Pls.' Mot. (Doc. 71) and attachment thereto.

---

[9] Notably, the email blocking did not deprive the Plaintiff of access to the emails he authored; indeed, Ferrone has produced copies of certain of the emails through the course of this litigation. *See generally* Dep. Tr. of R. Ferrone (filed under Doc. 69-11) at 41. What the Plaintiff complains of is the emails' failure to reach their intended recipients, and that issue is better framed under the right to petition claim rejected above.

Even assuming the Plaintiff had evidence of alleged spoliation, it was incumbent upon him to seek redress through an appropriate discovery motion.  His complaints come too late, and the court cannot now resolve such a serious accusation through its consideration of papers submitted in opposition to summary judgment and with no response by the Defendants.

Reaching the merits of Ferrone's charges, the court finds unconvincing the "evidence" referenced in his Statement of Facts.  In essence, the Plaintiff's beliefs appear based on purported inconsistencies in the testimony of DCS employees regarding largely immaterial events that transpired over two years ago, unwarranted inferences from witness testimony, and events having completely innocent, and more likely, explanations.  *See, e.g.*, Pls.' Facts at ¶ 101 (arguing that Defendants claim to have blocked only fourteen emails, rather than seventeen)[10]; *id.* at ¶ 71 (suggesting "coverup" was evidenced by Davin's sending email to Ferrone "even though just 10 days earlier he had requested that all of the Plaintiffs' email addresses . . . be blocked")[11]; *and id.* at ¶¶ 121-26 (identifying purported discrepancies in testimony of DCS agents, regarding matters immaterial to summary judgment analyses above).

In addition, the undersigned was called upon to closely monitor the parties' computer-based and other discovery in this case.  *See, e.g.*, text-only discovery Orders dated May 3, 2007; May 8, 2007; May 14, 2007 (1st); May 14, 2007 (2d); May 24, 2007; Jun. 6, 2007; Jun. 11, 2007;

---

[10]  In computing the number of blocked messages, the Defendants have focused on the private emails of Ferrone and his secretary inadvertently caught by the County's spam blocker. *See, e.g.*, Defs.' Br. at 7-8.  Unsurprisingly, and reasonably, Defense counsel did not count the "spam" messages previously sent from "press@rock-port.com." *See id.*

[11]  As seen above, there is no evidence that Davin knew or intended for the spam blocker to catch Ferrone's personal emails.  If anything, Davin's continued transmission of emails to the Plaintiff does more to confirm his lack of knowledge regarding the blockage than to support Ferrone's conspiracy theories regarding coverups and spoliation.

*and* Jun. 12, 2007. Although genuine disagreement between the parties was expressed, the court has absolutely no reason to question the responsiveness and/or integrity of the Defendants and their lawyers in completing discovery. In fact, the Defendants repeatedly expressed, and behaved consistently with, their belief that they had nothing to hide and would cooperate fully.

In sum, there is no basis for believing that any emails other than the ones discussed above were blocked, intentionally or inadvertently, by the Defendants. The Plaintiffs' spoliation claims are untimely, inconsistent with the behavior exhibited by the Defendants, have little to no evidentiary support, and quite frankly, are much ado about nothing.

### F.     The State Law Claims

"[A]bsent extraordinary circumstances, where the federal causes of action are dismissed the district court should . . . refrain from exercising [supplemental] jurisdiction." Bright v. Westmoreland County, 380 F.3d 729, 751 (3d Cir. 2004) (citations and internal quotations omitted). No extraordinary circumstances exist, and the District Court should decline to exercise supplemental jurisdiction.

### CONCLUSION

For all of the reasons stated herein, the Defendants' Motion for Summary Judgment should be granted regarding the Plaintiffs' federal claims, and the District Court should decline to exercise supplemental jurisdiction over his state law claims.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by September 24, 2007. Responses to objections are due by October 4, 2007.

September 6, 2007

                                                                 Francis X. Caiazza
                                                                 U.S. Magistrate Judge

cc (via email):

Gianni Floro, Esq.
Michael H. Wojcik, Esq.
Caroline Liebenguth, Esq.
Craig E. Maravich, Esq.